UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CYNTHIA M. SANTIAGO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 17-cv-10256-ADB |
| | * | |
| U.S. BANK, N.A., *as Trustee for* | * | |
| *LSF9 Master Participation Trust*, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiff filed this action *pro se* against her mortgage creditor, Defendant U.S. Bank, N.A., as Trustee for LSF9 Master Participation Trust, alleging that Defendant improperly foreclosed on her home and refused to modify the mortgage. [ECF No. 1 at ¶¶ 5−7] ("Compl."). Pending before the Court is Defendant's Motion for Summary Judgment. [ECF No. 10]. To date, Plaintiff has not responded to the motion, and the opposition deadline has long expired. The Court ordered Plaintiff to show cause as to why the motion should not be granted by July 21, 2017. [ECF No. 15]. Plaintiff never responded. For the following reasons, the motion is GRANTED.

**I.   BACKGROUND**

Plaintiff took up residence in her home in Methuen, Massachusetts (the "Property") in 2008. Compl. ¶¶ 1, 6. Thereafter, on June 22, 2009, Plaintiff and co-borrower Yovanny Santiago executed a mortgage for the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Sidus Financial LLC (the "Mortgage"). [ECF No. 12 at ¶ 1] ("Defendant's Concise Statement of Material Facts" or "SMF"). The Mortgage secured Plaintiff's obligation to repay a loan in the principal amount of $192,341 pursuant to the terms of

1

the promissory note executed on June 22, 2009. Id. ¶ 2. On August 1, 2012, MERS assigned the Mortgage to Bank of America, N.A. Id. ¶ 6. On August 18, 2014, Bank of America, N.A. assigned the Mortgage to the Secretary of Housing and Urban Development ("HUD"). Id. ¶ 7. On October 16, 2014, HUD assigned the Mortgage to Defendant. Id. ¶ 8. Each assignment was recorded in the Northern Essex Registry of Deeds within a few months of the respective assignment. SMF ¶¶ 6−9.

On March, 22, 2016, after Plaintiff defaulted on the Mortgage, Caliber Home Loans, Inc. ("Caliber"), as the Mortgage servicer, executed an Affidavit Regarding Note Secured by a Mortgage to be Foreclosed, affirming that Defendant had complied with Mass. Gen. Laws ch. 244, § 35B and that Defendant was the holder/owner of the promissory note secured by the Mortgage. SMF ¶ 9. See [ECF No. 11 at 2−3]; [ECF No. 13-6 at 2−3]; see also Clockedile v. U.S. Bank Trust, N.A., 189 F. Supp. 3d 312, 316 (D. Mass. 2016) (with respect to "certain mortgage loans," as defined under Section 35B, creditors must "take reasonable steps and make good faith efforts to avoid foreclosure"); Olabode v. Caliber Home Loans, Inc., No. 15−10146, 2015 WL 4111439, at *2 n.3 (D. Mass. July 8, 2015) (Mass. Gen. Laws ch. 244, § 35C requires "that '[a] creditor shall not cause publication of notice of foreclosure . . . when the creditor knows that the mortgagee is neither the holder of the mortgage note nor the authorized agent of the note holder . . . .'" (citation omitted)).

On July 27, 2016, Defendant sent Plaintiff and her co-borrower, by certified mail, return receipt requested, Notices of Intent to Foreclose Mortgage and Intent to Pursue Deficiency after Foreclosure of Mortgage, as well as a copy of the Notice of Mortgagee's Sale of Real Estate, addressed to the Property and the most recent addresses on record for the Plaintiff and her co-borrower. SMF ¶ 10; [ECF No. 11 at 3]; [ECF No. 14-1 at 2−4]. These notices included a copy

of the promissory note and a certification pursuant to Massachusetts 209 CMR 18.21A(2)(c), stating that the Mortgage was in default and identifying Defendant as the owner of the promissory note and Caliber as Defendant's authorized agent in possession of the note. [ECF No. 14-1 at 5−8]. Among other things, the notices documented Defendant's intent to foreclose by sale on or after August 23, 2016 at 10:00 AM. Id. at 2. Defendant published notice of the planned sale in the Eagle-Tribune, a newspaper with general circulation in Methuen, for three consecutive weeks beginning the week of July 25, 2016. [ECF No. 13-7 at 5]. The scheduled auction was eventually postponed by public proclamation until October 12, 2016, and again postponed by public proclamation until November 28, 2016 at 2:00 PM,[1] [ECF No. 13-7 at 5], at which time Defendant purchased the Property as the highest bidder. Id.; see SMF ¶ 11. On January 19, 2017, Caliber recorded a Foreclosure Deed and Post Sale Affidavit Regarding Note, certifying, inter alia, that the "Mortgagee was [] the holder/owner of the promissory note secured by the [] Mortgage" for the period of time between the issuance of the Section 14 notices and the date of the foreclosure sale. SMF at ¶¶ 11−12.

On February 16, 2017, Plaintiff filed the instant eight-paragraph complaint *pro se*, alleging that she requested loan modifications but never received assistance from Defendant. Compl. ¶ 6. She further alleged that Defendant failed to properly notify her of the auction and "like[d] to evict [her] family," because Plaintiff has a family member who is disabled and uses a wheelchair.[2] Id. ¶¶ 5−6. Plaintiff requests that the Court enjoin Defendant from all collection,

---

[1] "A 'public proclamation' is an announcement of the postponement at the time and place of the originally scheduled sale." Branch Ave Capital, LLC v. U.S. Bank Nat'l. Ass'n., No. 12−40140, 2013 WL 5242121, at *3 n.2 (D. Mass. Sept. 16, 2013).
[2] It is unclear from the Complaint whether the family member who is disabled ever resided at the Property. Defendant answered that it lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff has a disabled family member. [ECF No. 7 at 2].

3

foreclosure, and eviction proceedings. Id. ¶ 8.

## II. LEGAL STANDARD

"When a non-moving party fails to file a timely opposition to an adversary's motion for summary judgment, the court may consider the summary judgment motion unopposed, and take as uncontested all evidence presented with that motion." Perez-Cordero v. Wal-Mart Puerto Rico, 440 F.3d 531, 533−34 (1st Cir. 2006). Here, Plaintiff has neither opposed the motion nor responded to the Court's order to show cause. Over five months have passed since the filing of the motion, and the deadline to show cause expired on July 21, 2017. Accordingly, the Court treats the motion as unopposed.

"In most cases, a party's failure to oppose summary judgment is fatal to its case." Perez-Cordero, 440 F.3d at 534. However, "[e]ven when faced with an unopposed motion for summary judgment, a court still has the obligation to test the undisputed facts in the crucible of the applicable law in order to ascertain whether judgment is warranted." Velez v. Awning Windows Inc., 375 F.3d 35, 42 (1st Cir. 2004). The Court "constru[es] the record evidence in the light most favorable to the nonmoving party." Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law. A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).

The Court also recognizes that a "pro se complaint is entitled to a liberal construction" and applies a "less stringent" standard to the instant Complaint as compared to a pleading drafted

by an attorney. Garrett v. Ill. Att'y Gen., No. 14−10217, 2014 WL 652614, at *2 (D. Mass. Feb. 18, 2014) (quoting Haines v. Kerner, 404 U.S. 519, 520−21 (1972)). The Court, however, must "refrain from conjuring up unpled allegations to give life to a phantom cause of action." Gaskins v. Dickhaut, 962 F. Supp. 2d 336, 339 (D. Mass. 2013).

### III. DISCUSSION

#### A. Standing

Plaintiff requests that Defendant cease all foreclosure activities until Defendant shows that it "had proper assignment and standing in this case." Compl. ¶ 8. Plaintiff does not offer any other allegations or evidence regarding the assignment of the Mortgage or Defendant's right to foreclose. The Court may ignore "conclusory allegations, improbable inferences, and unsupported speculation," including where, as here, Plaintiff fails to allege that the assignments of the Mortgage were unenforceable or that Defendant lacked standing. Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

As to standing, even if Plaintiff had pled her claim with more clarity, it would nonetheless fail because there is no genuine dispute that Defendant had proper standing to foreclose. Generally, "the foreclosing bank must hold both the note and the mortgage in order to have standing to sell the property at a foreclosure sale." Galvin v. U.S. Bank, N.A., 852 F.3d 146, 156 (1st Cir. 2017). The record before the Court includes the recorded assignments of the Mortgage culminating with the assignment to the Defendant on October 16, 2014, years prior to the foreclosure sale. See SMF ¶¶ 6–9. It also includes the certification pursuant to Massachusetts 209 CMR 18.21A(2)(c), Foreclosure Deed and related affidavit, and Post Sale Affidavit Regarding Note, all of which indicate that Defendant owned the Mortgage and the note, and

therefore had standing to foreclose. See SMF ¶¶ 11−12; [ECF No. 13-6 at 2−3]; [ECF No. 14-1 at 5]. There is no evidence or non-conclusory allegation to the contrary with regard to standing.

Plaintiff's challenge to the assignments of the Mortgage similarly fails. "Where a mortgage has been assigned, the assignee may foreclose 'regardless whether the assignment has been recorded,' so long as the assignment takes place[] prior to the publication of notice and execution of sale." Culhane v. Aurora Loan Servs. of Neb., 826 F. Supp. 2d 352, 361 (D. Mass. 2011), aff'd, 708 F.3d 282 (1st Cir. 2013) (quoting U.S. Bank N.A. v. Ibanez, 941 N.E. 2d 40, 55 (Mass. 2011)). "The foreclosing entity must hold the mortgage at the time of the notice and sale because an attempt to foreclose prior to a valid assignment of the mortgage is a 'structural defect that goes to the very heart of defendant's ability to foreclose by advertisement.'" Id. (quoting Ibanez, 941 N.E.2d at 50). Here, Defendant was assigned the Mortgage on October 16, 2014, and the assignment was recorded with the Northern Essex Registry of Deeds on November 24, 2014. SMF ¶ 8. Defendant also provided evidence of the prior assignments, all of which were recorded long before publication of the notice of sale. Plaintiff does not allege any facts indicating that a defect or other circumstance might have voided the assignments. See Galvin, 852 F.3d at 157 (borrower has standing to challenge validity of assignment where defect may render it void but "not when it renders the assignment merely voidable by one of the parties to the assignment"); see also Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 9 (1st Cir. 2014) ("'Void' contracts or agreements are 'those . . . that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification.' By contrast, 'voidable' refers to a contract or agreement that is 'injurious to the rights of one party, which he may avoid at his election.'" (citations omitted)). Therefore, based on the record before the Court, Plaintiff's challenges to Defendant's standing and the assignments cannot succeed.

B.  **Notice of Foreclosure**

Plaintiff next claims that Defendant initiated an unlawful foreclosure by failing to properly notify her of the foreclosure sale auction. Compl. ¶ 5. Other than this conclusory allegation, Plaintiff does not provide any additional factual or legal support for her position. "In Massachusetts, foreclosure of a mortgage may be undertaken without judicial authorization." In re Bailey, 468 B.R. 464, 472 (Bankr. D. Mass 2012). The mortgage holder may "foreclose on a property . . . by exercise of the statutory power of sale, if such a power is granted by the mortgage itself." Id. (quoting Ibanez, 941 N.E.2d at 49).[3] In a non-judicial foreclosure state, "strict compliance with the statutory notice of sale provision is 'essential to the valid exercise of [the] power' of sale." Culhane, 826 F. Supp. 2d at 362 (quoting Ibanez, 941 N.E.2d at 50).

Mass. Gen. Laws ch. 244, § 14 governs the procedure for providing proper notice of foreclosure under the power of sale. It requires that, prior to the sale:

> notice of the sale has been published once in each of 3 successive weeks . . . in a newspaper published in the city or town where the land lies or in a newspaper with general circulation in the city or town where the land lies and notice of the sale has been sent by registered mail to the owner or owners of record of the equity of redemption as of 30 days prior to the date of sale, said notice to be mailed by registered mail at least 14 days prior to the date of sale to said owner or owners to the address set forth in section 61 of chapter 185, if the land is then registered or, in the case of unregistered land, to the last address of the owner or owners of the equity of redemption appearing on the records of the holder of the mortgage, if any.
> . . .

M.G.L. ch. 244 § 14. Thus, Section 14 requires "[a]dvance notice of the foreclosure sale . . . by publication in a newspaper published or generally circulating in the town where the mortgaged property lies," Culhane, 826 F. Supp. 2d at 362, and also "that a mortgagee send notice of the

---

[3] Although not raised by Plaintiff, the Court notes that the Mortgage expressly gives Defendant the statutory power of sale. [ECF No. 13-2 at 2] ("Borrower does hereby mortgage, grant and convey to MERS . . . and to the successors and assigns of MERS, with power of sale, the following described property. . . .").

7

foreclosure to the mortgagor at least fourteen days prior to the date of the sale." Sovereign Bank v. Sturgis, 863 F. Supp. 2d 75, 80 (D. Mass. 2012).

Here, Defendant sent, by certified mail, notice of the sale to both the Property address and the most recent address that Defendant had on record for Plaintiff and her co-borrower well over fourteen days before the initial sale date. [ECF No. 14-1]. See M.G.L. ch. 4, § 7 ("'Registered mail,' when used with reference to the sending of notice . . . shall include certified mail.").[4] Defendant also published notice of the scheduled auction in the Eagle-Tribune, a newspaper with general circulation in Methuen, during the weeks of July 25, August 1, and August 8, 2016. Whether Plaintiff actually received notice of the sale is not relevant. See Dooling v. James B. Nutter & Co., 139 F. Supp. 3d 505, 512 (D. Mass 2015) ("The law in Massachusetts is clear; the requirement that the notice be mailed to the owner of the relevant property is satisfied by mailing and nonreceipt is irrelevant" (citations omitted)). Accordingly, Defendant complied with Section 14 and Plaintiff's bare assertion to the contrary does not preclude granting summary judgment.

Summary judgment is similarly appropriate on Plaintiff's Chapter 93A claim, which is based on the same alleged improper notice of the sale. Compl. ¶ 5. To prevail under Chapter 93A, Plaintiff must show "'1) a deceptive act or practice on the part of the defendant, 2) an

---

[4] The postponement of the sale date by public proclamation did not obligate Defendant to satisfy Section 14's notice requirements a second time. See Hammond v. JPMC Specialty Mortg. LLC, No. 10–11121, 2011 WL 1463632, at *8 (D. Mass. Apr. 15, 2011) ("Under Massachusetts law, a mortgagee may postpone a foreclosure auction . . . without renewing the statutory notice requirements."); see also Fitzgerald v. First Nat'l Bank of Boston, 703 N.E.2d 1192, 1194 (Mass. App. Ct. 1999) (citations omitted) ("It has long been accepted practice in Massachusetts that, while details of the initial auction must be provided by written notice to the appropriate parties and published in a newspaper in accordance with [Mass. Gen. Laws ch.] 244, §§ 11–17B, a postponement of the sale may be announced by public proclamation to those present at the auction site.").

injury or loss suffered by the plaintiff and 3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury.'" Jones v. Experian Info. Sols. Inc., 141 F. Supp. 3d 159, 163 (D. Mass. 2015) (citation omitted).

Here, Plaintiff has not pled or supported any of the elements of a Chapter 93A claim. The claim relies solely on a violation of the notice requirements under Massachusetts foreclosure law. As discussed supra, Defendant complied with Section 14. Further, it is "not enough in the context of Chapter 93A for [the plaintiff] to allege that defendants foreclosed on her property in violation of Massachusetts foreclosure law." Vo. v. HSBC Bank USA, N.A., No. 16−10425, 2016 WL 8839019, at *7 (D. Mass. Dec. 5, 2016) (quoting Juarez v. Select Portfolio Servicing, 708 F.3d 269, 281 (1st Cir. 2013)) (plaintiff must "establish that the violation 'has an extortionate quality that gives it the rancid flavor[s] of unfairness [and deceptiveness]'"). Because Plaintiff has not adequately alleged or provided any evidence of unfair or deceptive acts by Defendant, she cannot prevail under Chapter 93A.[5]

### C. Loan Modification

Plaintiff claims that she repeatedly requested loan modifications but that Defendant never assisted her. Compl. ¶ 6. Defendant responds that it had no duty to modify the Mortgage. [ECF No. 11 at 7]. "[I]t is familiar law that a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." Mackenzie v. Flagstar Bank, FSB, 738 F.3d 486, 492−93 (1st Cir. 2013) (quoting

---

[5] As Defendant correctly argues, Plaintiff also has not shown compliance with the statutory notice requirement of Chapter 93A. "'Before bringing suit under this statute, a plaintiff must mail to the defendant 'a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered.'" Kirtz v. Wells Fargo Bank N.A., No. 12−10690, 2012 WL 5989705, at *11 (D. Mass. Nov. 29, 2012) (quoting Mass. Gen. Laws ch. 93A, § 9(3)).

Blackwood v. Wells Fargo Bank, N.A., No. 10−10483, 2011 WL 1561024, at *5 (D. Mass. Apr. 22, 2011)). The scope of the implied covenant of good faith "'is shaped by the nature of the contractual relationship from which the implied covenant derives,'" and it is "only as broad as the contract that governs the particular relationship.'" Id. at 493 (quoting Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 238 (1st Cir. 2013)). This implied covenant "cannot 'create rights and duties not otherwise provided for in the existing contractual relationship.'" Id. (quoting Young, 717 F.3d at 238).

In Massachusetts, "absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults." Peterson v. GMAC Mortg., LLC, No. 11−11115, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011) (citing Carney v. Shawmut Bank, N.A., No. 07-P-858, 2008 WL 4266248, at *3 (Mass. App. Ct. 2008)). If the mortgage does not expressly require the mortgagee to negotiate for a loan modification, it would "be an error to extend the implied covenant [of good faith] to encompass a duty to modify (or consider modifying) the loan prior to foreclosure." MacKenzie, 738 F.3d at 493.[6] See Aragao v. Mortg. Elec. Registration Sys., Inc., 22 F. Supp. 3d 133, 141 (D. Mass. 2014) ("courts will not use the duty of good faith to imply modification or negotiation obligations on the part of a mortgagee, especially after default"). Here, because the Mortgage contains no such provision, Plaintiff has no basis for claiming that Defendant was required to modify the Mortgage.[7]

---

[6] If the mortgage holder voluntarily engaged in negotiations concerning a loan modification, then there may be an implied duty to negotiate in good faith. See Peterson, 2011 WL 5075613, at *6 (noting "that if a mortgage holder voluntarily engages in negotiation then it must do so in good faith"). Plaintiff, however, provides no basis for the Court to conclude or infer that any negotiations occurred.

[7] The Court notes that "[u]nder Mass. Gen. Laws ch. 244, § 35B, a lender holding a 'certain mortgage loan' must review the mortgage loan for a possible modification before publishing a statutory notice of foreclosure sale." Rose v. Bank of America, No. 16–11558, 2017 WL 1381648, at *5 (D. Mass. Apr. 17, 2017). Here, the Court cannot infer from the pleadings or

### D. Accommodation for Disabled Family Member

Plaintiff also appears to claim that the foreclosure sale was unlawful because Plaintiff has a disabled family member who is wheelchair bound. Plaintiff provides no additional facts to support a connection between the foreclosure sale and her family member. To the extent that Plaintiff is attempting to state a discrimination claim under the Americans with Disabilities Act ("ADA"), her claim fails. To show a discriminatory denial of services under the ADA, Plaintiff must demonstrate that (1) she is a "qualified individual" with a disability; (2) that the defendant is subject to the ADA; and (3) that she was "'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disability.'" Aquino v. Prudential Life & Cas. Ins. Co., 419 F. Supp. 2d 259, 267 (E.D.N.Y. 2005) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)); see also Tompkins v. United Healthcare of New Eng., Inc., 203 F.3d 90, 93−94 (1st Cir. 2000) ("To recover under either Title I or Title III of the ADA, the aggrieved party must be able to show that he or she was denied some benefit on account of a disability or an association with a disabled person."). Plaintiff does not allege that she is a person with a disability or set forth any allegations concerning her relationship with the disabled family member to support her contention that discrimination against a family member is actionable under these circumstances. Further, assuming that Defendant is subject to the ADA, Plaintiff does not adequately allege that

---

other evidence in the record that Plaintiff asserts a violation of Section 35B. Plaintiff never references Section 35B and the Complaint "does not identify which notices [she] believes were non-compliant, whether [she] believes the notices were never sent at all, or whether one of the other requirements in the statute was violated." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 79 (1st Cir. 2014). Additionally, "[t]he complaint does not plead any factual allegations as to whether a modification was necessary" under the provisions of Section 35B and therefore "fails to state a plausible claim for relief on the basis that no modification was offered." Rose, 2017 WL 1381648, at *5−6.

she was denied any service because of her family member's disability or that the ADA requires mortgagees to accommodate the disabilities of borrowers through a loan modification or other relief from an otherwise permissible foreclosure. See Webster Bank v. Oakley, 830 A.2d 139, 163 (Conn. 2003) (under Title III of the ADA, mortgagee "was not required to alter the otherwise universally applicable terms or conditions of its mortgage policies to accommodate the disabilities of borrowers"). Even when viewed in the light most favorable to Plaintiff, "no nexus can be drawn between the [allegations in the Complaint] and a claim for disability discrimination pursuant to the ADA." Aquino, 419 F. Supp. 2d at 272. Accordingly, to the extent it was pled at all, Plaintiff's claim under the ADA is unavailing.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's request for injunctive relief and GRANTS Defendant's Motion for Summary Judgment [ECF No. 10].

**SO ORDERED.**

Dated: November 13, 2017 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE